UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MARILYN GERSHANOW, as Administrator of the Estate of Cynthia Gershanow,

      Plaintiff,

  - against -            11-CV-8174 (CS)

COUNTY OF ROCKLAND, ROCKLAND TRANSIT CORP., **OPINION & ORDER**
TOWN OF CLARKSTOWN, TOWN OF RAMAPO, and
LAFONTANT ST. GERMAIN,

      Defendants.

---

Appearances:

Lawrence Bernard McCarron
Rogers McCarron & Habas, P.C.
Orangeburg, New York
*Counsel for Plaintiff*

Kalliopi P. Kousis
Heather C. Ragone
Gallo Vittucci Klar LLP
New York, New York
*Counsel for County of Rockland, Rockland Transit Corp.*
*and Lafontant St. Germain*

Harold Y. MacCartney
MacCartney, MacCartney, Kerrigan & MacCartney
Nyack, New York
*Counsel for Town of Clarkstown*

Janice Gittelman
Town of Ramapo, Town Attorney
Suffern, New York
*Counsel for Town of Ramapo*

1

Seibel, J.

Before the Court are the Motions for Summary Judgment of Defendants County of Rockland ("Rockland County"), Rockland Transit Corp. ("Rockland Transit"), Town of Clarkstown ("Clarkstown"), Town of Ramapo ("Ramapo") and Lafontant St. Germain ("Mr. St. Germain").[1]  (Docs. 127, 136, 147.)

## I. Background

The following facts are set forth based upon the parties' Local Civil Rule 56.1 statements and supporting materials, and are undisputed except as noted.  I set forth only those facts relevant to my decision.

Plaintiff's decedent, Cynthia Gershanow ("Ms. Gershanow"), was a wheelchair-bound individual who suffered from spinal muscular atrophy.  (P's 56.1 Rockland Resp. ¶ 2; P's Aff. Ex. 5 ("Gershanow 6/28/2011 Dep."), at 7.)[2]  Due to her disability, Ms. Gershanow required 24-hour care.  (Gershanow 6/28/2011 Dep. 12.)  Ms. Gershanow lived in an apartment complex for disabled individuals in Rockland County, New York.  (*Id.* at 6, 29.)

On October 28, 2010, Ms. Gershanow traveled with her personal care aide, Raquel Andrade ("Ms. Andrade"), on Rockland Transit buses to and from a grocery store near Ms. Gershanow's apartment.  (*Id.* at 19-20.)  Rockland Transit was under contract with Rockland County to provide bus service on the routes Ms. Gershanow and Ms. Andrade traveled on October 28, 2010.  (P's 56.1 Rockland Resp. ¶ 6.)  Mr. St. Germain, a Rockland Transit employee, drove the bus Ms. Gershanow and Ms. Andrade took on the return trip from the grocery store.  (*Id.* ¶ 7.)

---

[1] Throughout this opinion, I will refer to Rockland County, Rockland Transit and Mr. St. Germain collectively as the "Rockland Defendants."

[2] "P's 56.1 Rockland Resp." refers to Plaintiff's Response to County of Rockland's 56.1 Statement.  (Doc. 143-1.)  "P's Aff." refers to Lawrence B. McCarron's Affirmation in Opposition to Summary Judgment.  (Doc. 143-2.)

The final portion of the return trip involved a westward turn onto East Eckerson Road from West Clarkstown Road. (*See* Ballard Aff. Ex. A ("E. Eckerson Rd. Map").)[3] The bus then traveled west on East Eckerson Road, past Fayva Court. (*See id.*)  After passing Fayva Court, but before reaching Mallory Road, Mr. St. Germain stopped the bus either at or before reaching the designated bus stop on the northern side of East Ramapo Road (the "Clarkstown bus stop"), to allow Ms. Gershanow and Ms. Andrade to get off the bus. (P's 56.1 Rockland Resp. ¶ 11.) The Clarkstown bus stop is located in Clarkstown, New York. (*See* Clarkstown's Mem. 13-16.)[4] As discussed below, the parties dispute whether Mr. St. Germain stopped the bus at the Clarkstown bus stop or between Fayva Court and the Clarkstown bus stop.

Plaintiff contends that Mr. St. Germain let Ms. Gershanow and Ms. Andrade off his bus between Fayva Court and the Clarkstown bus stop despite Ms. Gershanow's request for him to stop at the intersection of Fayva Court and East Eckerson Road. (P's 56.1 ¶ 3.)[5] Ms. Gershanow requested to depart the bus at Fayva Court, because Fayva Court had little traffic, (P's Aff. Ex. 7 ("Andrade Dep."), at 73), and a usable curb ramp, (P's Aff. Ex. 6 ("Gershanow 11/21/2012 Dep."), at 168-69), such that Ms. Gershanow could safely cross East Eckerson Road there, (P's 56.1 Ramapo Resp. ¶¶ 9-10).[6]  In contrast, according to Plaintiff, individuals in wheelchairs could not use the curb ramp at the Clarkstown bus stop, (P's Aff. Ex. 15 ("Mangam Aff."), at ¶ 4), because the curb ramp was too steep, (Gershanow 11/21/2012 Dep. 63-65), and there was no crosswalk between the Clarkstown bus stop and the curb ramp directly across East Eckerson Road, (P's 56.1 ¶ 12).  The intersection of Fayva Court and East Eckerson Road was not,

---

[3] "Ballard Aff." refers to Affidavit of Wayne T. Ballard. (Doc. 129.)

[4] "Clarkstown's Mem." refers to Clarkstown's Memorandum of Law. (Doc. 130.)

[5] "P's 56.1" refers to Plaintiff's Statement Pursuant to Rule 56.1. (Doc. 143-1.)

[6] "P's 56.1 Ramapo Resp." refers to Plaintiff's Response to Town of Ramapo's Statement Pursuant to Rule 56.1. (Doc. 143-1.)

however, a designated bus stop, so Mr. St. Germain refused Ms. Gershanow's request to be let off at Fayva Court.  (*See* P's Aff. Ex. 10 ("St. Germain Dep."), at 72-73.)

In his deposition testimony, Mr. St. Germain claimed that he lowered the bus ramp so that it rested on the curb ramp directly in front of the Clarkstown bus stop.  (*Id.* at 76-77.)  Mr. St. Germain testified that after he lowered the bus ramp, he watched Ms. Gershanow maneuver down the bus ramp and onto the curb ramp, and then inside the bus shelter.  (*Id.* at 85-86.)  Plaintiff contends that Mr. St. Germain discharged Ms. Gershanow and Ms. Andrade in the white-striped portion of the roadway, to the east of the Clarkstown bus stop.  (P's 56.1 Rockland Resp. ¶ 9; Andrade Dep. 75-76*.*)  Plaintiff claims that aside from rotating her wheelchair 180 degrees, Ms. Gershanow did not move from the spot where she departed the bus.  (P's 56.1 ¶ 6; Andrade Dep. 88.)  After being on the road's surface for a few minutes, Ms. Gershanow was struck by a car, (*see* Andrade Dep. 86-90), and suffered severe injuries, (P's 56.1 ¶ 14).

Plaintiff presents evidence that prior to October 28, 2010, Ms. Gershanow and one of her neighbors, Barbara Mangam ("Ms. Mangam"), complained about their inability to use the Clarkstown bus stop to three individuals: Mike Gursky, Irwin Cohen and Mike Pendergrass.  (*See* Mangam Aff. ¶¶ 7-9.)  These individuals were employed by either Rockland County or Rockland Transit.  (*Id.* ¶¶ 6-7.)  Plaintiff points to no evidence as to these individuals' job titles or responsibilities.  (*See id.*)  Other than holding sensitivity trainings for bus drivers regarding their interactions with handicapped individuals, (*see id.*), it is unclear what steps, if any, Rockland County and Rockland Transit took to provide wheelchair-bound individuals access to the Clarkstown bus stop or to generally make it safe for wheelchair-bound individuals to depart buses on the northern side of East Eckerson Road.  Ms. Gershanow and Ms. Mangam also stated that Rockland Transit bus drivers frequently dropped wheelchair-bound individuals off at Fayva

4

Court, (*see* Gershanow 11/21/2012 Dep. 65; Mangam Aff. ¶¶ 5, 11), but there is testimony that this would have been contrary to Rockland Transit's protocol, (*see* P's Aff. Ex. 9 ("Gunning Dep."), at 37-40).

There is no evidence that Ramapo or Clarkstown knew about accessibility problems on either the northern (Clarkstown) or southern (Ramapo) side of East Eckerson Road.  (*See* P's 56.1 Ramapo Resp. ¶¶ 14-15.)  Defendants dispute whether the towns – *i.e.* Ramapo and Clarkstown – or Rockland County constructed the sidewalks, curb ramps and bus shelters abutting East Ramapo Road, as well as which entity is responsible for their maintenance.[7]  (*See* Clarkstown's Mem. 13-16.)

Ms. Gershanow commenced this action on November 10, 2011.  (*See* Complaint ("Compl."), (Doc. 1).)  She filed an Amended Complaint on February 9, 2012, bringing a claim under Title II of the Americans with Disabilities Act (the "ADA") against all Defendants other than Mr. St. Germain, and negligence claims against all Defendants under New York State law. (*See* Amended Complaint ("AC"), (Doc. 14).)  Plaintiff subsequently discontinued her negligence claim against Ramapo.  (P's 56.1 Ramapo Resp. ¶ 19.)  Defendants now seek summary judgment on all claims.  (Docs. 127, 136, 147.)  Ms. Gershanow died while the Motions for Summary Judgment were pending.  (Doc. 155.)  Her mother, Marilyn Gershanow, was substituted as Plaintiff on February 21, 2014.  (Doc. 167.)

## II. Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[T]he dispute about a material fact is 'genuine' . . . if the evidence is such that

---

[7] I merely note this dispute.  I will leave resolution of this issue, which does not affect my decision and solely involves New York State law, to the New York courts if Plaintiff further pursues her negligence action.

a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*  On a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  The movant bears the initial burden of demonstrating "the absence of a genuine issue of material fact," and, if satisfied, the burden then shifts to the non-movant to present "evidence sufficient to satisfy every element of the claim." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.  Moreover, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and he "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1).  Where an affidavit is used to support or oppose the motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4); *see Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d

Cir. 2008). In the event that "a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may," among other things, "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2), (3).

### III. Analysis

#### A. ADA Claims

Title II of the ADA mandates that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (2012). To state a claim for injunctive relief under Title II, a plaintiff must demonstrate that (1) she is a qualified individual with a disability; (2) the defendant is subject to the ADA; and (3) plaintiff was denied the opportunity to participate in or benefit from the defendant's services, programs, or activities, or was otherwise discriminated against by the defendant, by reason of her disabilities. *Noel v. N.Y.C. Taxi & Limousine Comm'n*, 687 F.3d 63, 68 (2d Cir. 2012). To establish the third element, a plaintiff must show that she was denied meaningful access to the defendant's services, programs or activities. *See Henrietta D. v. Bloomberg*, 331 F.3d 261, 275 (2d Cir. 2003).

Plaintiff claims that all Defendants, other than Mr. St. Germain, violated the ADA by failing to make the curb ramps, sidewalks and bus stops on the northern and southern sides of East Eckerson Road accessible to individuals confined to wheelchairs. (*See* AC ¶¶ 37-51.)

1. Plaintiff's claim for injunctive relief under the ADA

Article III permits federal courts to "render opinions only with respect to live cases and controversies." *Independence Party of Richmond Cnty. v. Graham*, 413 F.3d 252, 255 (2d Cir. 2005) (internal quotation marks omitted); *see also* U.S. Const. art. III, § 2, cl. 1. "Federal courts have no constitutional power to consider a moot case, which does not present a live controversy." *Nat'l Org. for Marriage, Inc. v. Walsh*, 714 F.3d 682, 692 (2d Cir. 2013). The death of a party seeking injunctive relief will moot a case if that death "makes it impossible for the court to grant any effectual relief whatever to a prevailing party." *Independence Party*, 413 F.3d at 255 (internal quotation marks omitted); *see ABN Amro Verzekeringen BV v. Geologistics Ams., Inc.*, 485 F.3d 85, 94 (2d Cir. 2007) (stating a case might be moot "[i]f, for example, the plaintiff dies . . . before his request for prospective injunctive relief is resolved").

Given that Ms. Gershanow has died, she cannot benefit from ADA-compliant sidewalks, curb ramps and bus stops, and the claims for declaratory and injunctive relief are therefore moot, *see Tandy v. City of Wichita*, 380 F.3d 1277, 1290 (10th Cir. 2004); *Kahn v. NYU Med. Ctr.*, No. 06-CV-13455, 2007 WL 2000072, at *5 (S.D.N.Y. July 10, 2007), which Plaintiff has acknowledged, (*see* P's Jan. 31, 2014 Letter, at 3).[8]  Plaintiff's claims for declaratory and injunctive relief under the ADA are therefore dismissed.[9]

---

[8] "P's Jan. 31, 2014 Letter" refers to Plaintiff's letter to the Court, dated January 31, 2014. (Doc. 168.)

[9] To the extent Plaintiff asserts a claim under Title III, *see* AC ¶ 11 (referencing Title III); *id.* ¶ 42 (asserting violation of 42 U.S.C. § 12182, *i.e.*, Title III), that claim is also dismissed as moot. *See Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 94 (2d Cir. 2012) (Title III "authorizes private actions only for injunctive relief, not monetary damages"). Plaintiff disclaims, however, that she asserts a violation of Title III. (*See* Plaintiff's Memorandum of Law in Opposition to Summary Judgment ("P's Mem."), (Doc. 143), at 19; P's Aff. ¶ 57.)

2. <u>Plaintiff's purported claim for money damages under the ADA</u>

Contrary to the position taken by each Defendant, at least initially, (*see* Rockland's Reply ¶ 36; Ramapo's Mem. 7; Clarkstown's Mem. 2-3),[10] it is clearly established in the Second Circuit that a private plaintiff can sue for money damages under Title II of the ADA.[11] *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 115 (2d Cir. 2001). Unlike a claim for injunctive relief, a viable claim for money damages under the ADA would survive a plaintiff's death. *See De La Cruz v. Guilliani*, No. 00-CV-7102, 2002 WL 32830453, at *10 (S.D.N.Y. Aug. 26, 2002). To prevail on a claim for money damages under Title II, a plaintiff must prove a policymaker's "deliberate indifference to the rights secured the disabled by those statutes," in addition to the other elements of a Title II claim. *KM ex rel. D.G. v. Hyde Park Cent. Sch. Dist.*, 381 F. Supp. 2d 343, 358 (S.D.N.Y. 2005) (internal quotation marks omitted); *see Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009) (deliberate indifference "to the strong likelihood [of] a violation" is required for money damages under the Rehabilitation Act). Deliberate indifference does not require personal animosity or ill will. *Loeffler*, 582 F.3d at 275. Rather, a plaintiff demonstrates deliberate indifference in the Title II context where an "official with authority to address the alleged discrimination and to institute corrective measures on Plaintiff's behalf had actual knowledge of ongoing discrimination against

---

[10] "Rockland's Reply" refers to Rockland Defendants' Affirmation in Reply to Plaintiff's Opposition to Defendants' Motion for Summary Judgment and in further Support of Motion. (Doc. 142.) "Ramapo's Mem." refers to Defendant Town of Ramapo's Memorandum of Law in Support of Motion for Summary Judgment Dismissing the Complaint. (Doc. 149.) "Clarkstown's Mem." refers to Clarkstown's Memorandum of Law. (Doc. 130.)

[11] The parties' briefs were deficient in legal analysis, legal research and legal reasoning. (*See, e.g.,* Rockland's Memorandum of Law in Support of Motion for Summary Judgment ("Rockland's Mem."), (Doc. 138), at 20-21 (citing *Weddle v. Marriott Corp.*, No. 99-CV-6482, 2004 WL 1925495 (W.D.N.Y. Aug. 30, 2004), a case in which the plaintiff did not assert an ADA claim and the Court did not discuss requirements for such a claim, to support a confusing argument about causation requirements under the ADA).) It is a disservice to the clients and the Court when briefing is so difficult to follow.

9

Plaintiff but failed to respond adequately." *Stamm v. N.Y.C. Transit Auth.*, No. 04-CV-2163, 2013 WL 244793, at *4 (E.D.N.Y. Jan. 22, 2013).

The Amended Complaint, however, does not allege deliberate indifference, advert to any official on notice failing to respond adequately, (*see* AC ¶¶ 20-51), or even hint that Plaintiff is seeking money damages for the alleged ADA violations, (*see id.* ¶ 51, pp. 23-24). *See Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense.") (citations omitted). The only fair reading of the Amended Complaint is that Plaintiff is alleging simply the failure to comply with the ADA and is seeking only declaratory and injunctive relief. The Amended Complaint does not allege any facts that could lead to a reasonable inference that an official knew about the condition of the curb ramps, sidewalks and bus stops, much less that any such official could have rectified the problems but instead was deliberately indifferent to them. Plaintiff does not even recite the formulaic elements of a claim for money damages under Title II. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (alteration, citations, and internal quotation marks omitted). Moreover, Plaintiff's prayer for relief, which carefully spells out Plaintiff's demand for a declaratory judgment, injunctive relief and attorney's fees under the ADA, and money damages and attorney's fees for Plaintiff's state law negligence claims, makes no demand for money damages under the ADA.[12] (*See* AC 23-24.) Simply put, the Amended

---

[12] Given the absence of factual allegations that could conceivably suggest deliberate indifference and the specificity of the relief sought, the catchall – asking for "[s]uch other relief as the Court deems just and proper, and/or is allowable under the [ADA]," (AC 24) – is insufficient to alert the reader that deliberate indifference is alleged or money damages are sought.

Complaint did not state, or put Defendants on notice, that Plaintiff was alleging deliberate indifference or asserting a claim for money damages under the ADA.

Plaintiff cannot defeat Defendants' Summary Judgment Motions by raising a new claim for money damages in her submissions opposing summary judgment. *See Beckman*, 79 F. Supp. 2d at 407 ("Because a failure to assert a claim until the last minute will inevitably prejudice the defendant, courts in this District have consistently ruled that it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment.") (internal quotation marks omitted); *see also DBT Gmbh v. J.L. Mining Co.*, 544 F. Supp. 2d 364, 376 n.2 (S.D.N.Y. 2008) (plaintiff could not, in its brief opposing summary judgment, assert claim for a category of damages of which the Complaint did not provide notice).[13]  I, therefore, will not consider Plaintiff's purported claim for money damages in deciding Defendants' Summary Judgment Motions.[14]  *See Beckman*, 79 F. Supp. 2d at 408 (collecting cases).

---

[13] It is hard to read Plaintiff's brief as even arguing that she is entitled to money damages. Plaintiff's brief simply states that money damages are available under the ADA if the plaintiff shows "intentional discrimination." (*See* P's Mem. 20.)  Plaintiff's brief does not point to any evidence indicating such intentional discrimination, nor does it expand on what constitutes such discrimination in the Title II context.

[14] Even if I were to reach the merits of Plaintiff's purported claim for money damages, I would grant summary judgment to Ramapo and Clarkstown.  First, as to Ramapo, there is no evidence Plaintiff was ever denied meaningful access to the sidewalk or bus stop due to her inability to use the curb ramp on the southern (Ramapo) side of East Eckerson Road. *See Henrietta D.*, 331 F.3d at 275 (Title II requires providing disabled individuals "meaningful access" to services, programs and activities).  Second, Plaintiff has not argued or, scouring the record and drawing all inferences in Plaintiff's favor, presented any evidence that any official from either town knew of the alleged ADA violations, (*see* Gershanow 6/28/2011 Dep. 27-28 (Ms. Gershanow would notify County officials); Mangam Aff. ¶¶ 7, 9 (handicapped individual informed Rockland County and/or Rockland Transit officials)), thereby rendering it impossible for either town to have been deliberately indifferent. *See Loeffler*, 582 F.3d at 276 (deliberate indifference requires "actual knowledge").  As for the Rockland Defendants, Plaintiff names individuals who purportedly knew of handicapped persons' inability to use the Clarkstown bus stop, but points to no evidence, such as their positions with Rockland County or Rockland Transit, that these officials had authority to institute corrective measures. *See Stamm*, 2013 WL 244793, at *4 (dispute of fact regarding deliberate indifference existed where "a jury could reasonably conclude that at least one . . . official with authority to address the alleged discrimination and to institute corrective measures on Plaintiff's behalf had actual knowledge of ongoing discrimination against Plaintiff but failed to respond adequately").  I will not further comment on the subject given the murky nature of this standard in the Title II context, the insufficiently developed record and the lack of briefing on this issue.

B. *Supplemental Jurisdiction*

After disposing of the federal ADA claims, there are no federal causes of action left to try.[15]  The "traditional 'values of judicial economy, convenience, fairness, and comity'" weigh in favor of declining to exercise supplemental jurisdiction where all federal-law claims are eliminated before trial. *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)); *see also* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction.").  I have considered the *Cohill* factors, and conclude that this is the "usual case" in which they "point towards declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7.  Accordingly, I decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.[16]

---

[15] Assuming that the amount in controversy satisfies the threshold set in 28 U.S.C. § 1332(a) and Plaintiff is a Florida citizen, (*see* Doc. 162-3), this Court would not possess diversity jurisdiction over the negligence claims, because at least Rockland County, Clarkstown and Ramapo are New York citizens for the purposes of diversity jurisdiction, *see Moor v. Cnty. of Alameda*, 411 U.S. 693, 717-18 (1973), and Ms. Gershanow was also a New York citizen, (*see* Gershanow 6/28/2011 Dep. 6, 29).  *See* 28 U.S.C. § 1332(c)(2) (2012) ("[T]he legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent . . . ."); *Adler v. Adler*, 862 F. Supp. 70, 72 (S.D.N.Y. 1994) ("[T]he citizenship of a decedent, not the executor, is the only citizenship pertinent for diversity purposes by virtue of . . . § 1332(c)(2).").

[16] While I decline to exercise jurisdiction over Plaintiff's negligence claims, I note that some of the Rockland Defendants' arguments seem meritless.  The Rockland Defendants assert that white zebra stripes on a roadway constitute, as a matter of law, a safety zone at which a common carrier can allow passengers to exit.  This quite clearly is not so.  A common carrier "owes a duty to an alighting passenger to stop at a place where the passenger may safely disembark and leave the area." *Miller v. Fernan*, 73 N.Y.2d 844, 846 (1988).  Whether a location is safe and whether a passenger can safely leave depend on the circumstances, including the plaintiff's physical limitations that are or should be apparent. *See Kasper v. Metro. Transp. Auth. Long Island Bus*, 935 N.Y.S.2d 645, 647 (App. Div. 2011).  As Ms. Gershanow was confined to a wheelchair, it does not appear that Rockland Transit would have satisfied its duty by leaving her on the shoulder of East Eckerson Road, regardless of what was painted on the roadway, if she could not use the curb ramp to access the sidewalk or safely cross the street at that location.  Moreover, the cases the Rockland Defendants cite for their "white stripes as per se safety zone" proposition are inapposite to the duty of care owed by a common carrier to an alighting passenger. *See Smalls v. AJI Indus., Inc.*, 10 N.Y.3d 733, 734 (2008) (negligence claim brought by owner of automobile against owner of dumpster for placement of dumpster in roadway); *Chunhye Kang-Kim v. City of N.Y.*, 810 N.Y.S.2d 147, 147 (App. Div. 2006) (negligence claim against New York City by pedestrian based on negligent design of traffic barriers).  Likewise, the Rockland Defendants' Reply Affirmation states, "Plaintiff's opposition is premised almost solely on diametrically opposed facts that the Plaintiff was let off the bus [on] the roadway (just past Fayva Court) while also complaining

## IV. Conclusion

For the foregoing reasons, Defendants' Motions are GRANTED. The federal ADA claim is dismissed with prejudice and the remaining claims are dismissed without prejudice. The Clerk of Court is respectfully directed to terminate the pending motions, (Docs. 127, 136, 147), and close the case.

**SO ORDERED.**

Dated: March 20, 2014
White Plains, New York

CATHY SEIBEL, U.S.D.J.

---

that she was not let off the bus on the roadway (at Fayva Court) as was her desire." (Rockland's Reply ¶ 3(b) (emphasis in original).) Rather than being "diametrically opposed," Plaintiff's assertions make sense to this Court. Ms. Gershanow did not want to be let off on the roadway at the Clarkstown bus stop or at any point on East Eckerson Road past Fayva Court, because she would not be able to use the curb ramp at the bus stop, which would force her to ride her wheelchair against oncoming traffic to reach the accessible curb ramp at Fayva Court or cross East Eckerson Road at an unsafe location.